# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 09-293V
Filed: September 21, 2015
TO BE PUBLISHED

* * * * * * * * * * * * * * * * *
RACHEL MCCULLOCH,  \*
*as parent and legal guardian of* A.M.,  \*
\*
         Petitioner,  \*
\*
v.  \*     Real Rate Report; Attorneys' Fees
\*     and Costs; Boston, Massachusetts
\*     local rate.
\*
SECRETARY OF  \*
HEALTH AND HUMAN SERVICES,  \*
\*
         Respondent.  \*
* * * * * * * * * * * * * * * * *

**Gowen**, Special Master:

### ORDER DENYING MOTION FOR RECONSIDERATION[1]

On September 16, 2015, respondent filed a motion for reconsideration[2] of the undersigned's decision on petitioner's application for interim attorneys' fees and costs, issued on September 1, 2015. Respondent requests that the undersigned reconsider her evidence, specifically excerpts from the Real Rate Report ("RRR") previously submitted, along with additional excerpts of the RRR included in her motion. Respondent opposes petitioner's application for interim attorneys' fees and costs and argues in favor of awarding a Boston, Massachusetts hourly rate, instead of the forum rate of Washington, D.C., to the attorneys at Conway, Homer & Chin-Caplan.

A motion for reconsideration is governed by Vaccine Rule 10(e)(3), which states "[t]he special master has discretion to grant or deny [a motion for reconsideration], in the interest of

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

1

[2] See RCFC, Appendix B, Vaccine Rule 10(e).

[2] See RCFC, Appendix B, Vaccine Rule 10(e).

justice." Further, it is within the special master's discretion to seek a response from petitioner on this motion. See Vaccine Rule (10)(e)(2). Petitioner filed a response to respondent's motion on September 18, 2015, in which she argued that the undersigned should deny respondent's motion.

In her motion for reconsideration, respondent submitted additional excerpts from the RRR as exhibits FF and GG. Exhibit FF is an excerpt providing a definition of "General Liability Litigation," which respondent maintains is the most applicable category of the RRR to vaccine litigation. Respondent's exhibit GG provides a median hourly rate for partners and associates who practice "General Liability Litigation" in Washington, D.C., at a law firm of fifty or fewer attorneys, for comparison to the previously supplied chart for lawyers in this category in Boston.

The undersigned is not persuaded to alter my decision as the additional data provided does not change my criticisms of the RRR, and further demonstrates that the RRR data provided lacks sufficient foundation to be a reliable indicator of the local hourly rate for attorneys of reasonably comparable skill, experience, and reputation in Boston, Massachusetts. As explained in my decision, "for purposes of comparing the Washington, D.C. forum rate to the Boston rate for attorneys' fees, the overall comparability of attorneys' fees in those communities is the most relevant and demonstrable consideration," along with other factors, including consideration of the cost of living, assessments of the federal government locality pay in both cities, and case law (both from the Vaccine Program and outside of it) awarding attorneys' fees and costs to Boston attorneys. Decision on Fees at 18, docket no. 148, filed Sep. 1, 2015.  Accordingly, respondent's motion for reconsideration is **DENIED**.

### A.  Discussion of Exhibit FF

Respondent argues that because the General Liability Litigation category of the RRR includes medical malpractice, mass tort, product liability, and professional liability (some of which I found to have similar levels of complexity to vaccine cases) the RRR's  mean rate of $234 an hour for partners is a reliable indicator of the local attorney rate in Boston. The General Liability Litigation category also lists 24 other subcategories, including: advertising injury, asbestos/mesothelioma, auto and transportation, completed operations, construction defect, consumer related claims, crime, dishonesty and fraud, directors and officers, discrimination, employment, errors and omissions, fire, general/other, hospital, personal injury/wrongful death, policy coverage disputes, pollution, premises, property damage, sexual abuse, subrogation, toxic tort, workers compensation coverage and workplace safety. Notably, the 28 total subcategories under General Liability Litigation are the same for work performed by medium and large firms.

This General Liability Litigation index appears to be a general list that does not necessarily indicate that lawyers in the small firms handled any of these types of cases or which types they did. As there are 28 listed categories and only 37 partners surveyed in Boston, and 19 partners surveyed in Washington, D.C., it is unlikely that all of these practice areas were handled by these lawyers. See ex. Z at 14; ex. GG at 1. Additionally, there is no indication of what percentage of these cases might have fallen in categories that are likely to generate lower fees, such as consumer related claims, employment, and property damage, among others; and, the index certainly does not indicate how heavily weighted any of the categories are compared to others. The index also does not indicate anything about the level of complexity of cases, skill, experience, and reputation of the attorneys, which factor into determining an hourly rate.

Additionally, the RRR explains that,

> "Our aim is to provide a point of comparison for companies purchasing law firm services in the United States. To improve comparability, we removed data related to insurance company defense litigation for all analyses unless noted otherwise. Insurance litigations tends to be less expensive than other types of litigation, as it is typically more repetitive and less complex."

Ex. FF at 218. As noted in my decision, insurance carriers are often able to command lower rates for work because they are able to promise a significant volume of business, they pay bills on a regular monthly or quarterly basis, and promptly reimburse costs. As the great majority of hourly billing for medical malpractice, toxic tort, mass tort, and other similar litigation is done as insurance defense work, it seems unlikely that very much of this type of work would be done by the small firms included in the General Liability Litigation category.

As also explained in my decision, corporate billings, which form the basis of the RRR data, are not comparable to attorneys' fees paid by individuals. The large firm-small firm dichotomy is indeed a strong one when the clients are corporations. Large companies with complicated product liability defense matters, or mass torts, are generally retaining large firms and are willing to pay high rates for representation by prestigious firms. Small companies frequently cannot afford representation by large firms and seek counsel from less expensive firms. But that dichotomy has almost no relevance when considering legal services provided to individual people. In my decision, I discuss how the practice of plaintiff's personal injury law bears the greatest similarity to vaccine practice in that the attorneys are representing injured individuals, they have the burden of proof, and need to build and prove cases of varying complexity. Additionally, the attorneys do not get paid until a case is resolved, as their cases are generally done on a contingency basis and they front the costs. In my experience, there are virtually no plaintiff's personal injury firms in the United States that have fifty or more lawyers and yet, particularly, the leading firms in metropolitan areas are able to generate fees that rival large corporate firms. Generally, petitioners in vaccine cases are likely to be seeking representation by attorneys with the skill set of plaintiff's personal injury lawyers, not of those handling defense of employment discrimination, consumer complaints, property damage, and other cases on that list.

### B.  Discussion of Exhibit GG

Exhibit GG shows a median partner rate in Washington, D.C. for small firms in the General Liability category as $445 an hour, and for the highest quartile of partners in that category, $535 an hour. The comparative RRR rates for Boston are $220 an hour for the median, and $260 an hour for the highest quartile of partners. See ex. 7 at 14. While this information does suggest a substantial difference in the fees earned by small firms in Washington, D.C. and Boston, the difference between large law firm partners, $774 an hour in Washington D.C. and $722 an hour in Boston, is much smaller—raising numerous questions about the underlying services provided. Significantly, in the insurance defense category, the median hourly rate for small firm partners in Washington, D.C. is only $7.50 an hour greater than they are for small

firm partners in Boston.  Additionally, there is no data about the level of experience, other than the partner/associate designation, and no foundation as to what services the small firms in Boston are actually providing. As argued by petitioner, it is unlikely that the Boston firms included in this category, which depend on monthly billing models, have ever or would ever handle a vaccine case, as the learning curve would be too steep, the deferral of receipt of fees too unattractive, and the need to front and carry costs prohibitive. See Petitioner's Reply to Respondent's Objections to Supplemental Interim Fees and Costs Motion at 7, docket no. 144, filed July 17, 2015.

In short, even with this additional information, the evidence presented lacks sufficient foundation to explain the anomalous numbers in this category, or to demonstrate that these corporate billing rates should be applied to vaccine cases. While this exhibit does provide the comparative data previously missing from the record when I initially considered the parties' arguments, it is not sufficient to persuade me to disregard the other evidence showing that attorneys' fees in Washington, D.C. and Boston, Massachusetts are not "significantly different" pursuant to the *Davis* exception, and that work in the Vaccine Program itself is the most apt comparison. See *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1348 (Fed. Cir. 2008) (citing *Davis Cnty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

This motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

                                              **s/Thomas L. Gowen**
                                              Thomas L. Gowen
                                              Special Master