# In the United States Court of Federal Claims

No. 09-293V

(Filed under seal: April 3, 2018)

(Reissued: April 18, 2018)

| | | |
|---|---|---|
| **RACHEL MCCULLOCH, as parent and legal guardian of A.M.,** | ) ) ) | Vaccine case; award of attorney's fees and costs and petitioner's costs; respondent's challenge to petitioner's costs to maintain guardianship through claimant's lifetime |
| Petitioner, | ) ) | |
| v. | ) ) | |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** | ) ) ) | |
| Respondent. | ) ) | |

      Ronald C. Homer, Conway Homer, P.C., Boston, MA for petitioner. With him on the briefs and at the hearing was Christina Ciampolillo, Conway Homer, P.C., Boston, MA.

      Daniel A. Principato, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent. With him on the brief was Chad A. Readler, Acting Assistant Attorney General, Civil Division, C. Salvatore D'Alessio, Acting Director, Torts Branch, Civil Division, Catharine E. Reeves, Deputy Director, Torts Branch, Civil Division, and Alexis B. Babcock, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER[1]

LETTOW, Judge.

      Pending before the court is the government's motion for review contesting an award of certain costs attendant to a successful petition for compensation under the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, tit. III, §§ 301-323, 100 Stat. 3743, 3755 (1986) (currently codified, as amended, at 42 U.S.C. § 300aa-1 *et seq.*) (the "Vaccine Act"). In 2009, petitioner, Rachel McCulloch, filed a petition for compensation from the National Vaccine Injury Compensation Program on behalf of her daughter, A.M. Petitioner was found entitled to compensation, and compensation for A.M.'s injury and the costs of ongoing medical care were awarded pursuant to a proffer developed between Ms. McCulloch and the government. *See*

---

[1]In accord with the Rules of the Court of Federal Claims ("RCFC"), App. B, Rule 18(b), this opinion and order is initially being filed under seal. By rule, the parties are afforded fourteen days within which to propose redactions.

*McCulloch v. Secretary of Health & Human Servs.*, No. 09-293V, 2017 WL 7053992, at **1-2 (Fed. Cl. Spec. Mstr. Dec. 19, 2017) ("Fee Decision").

Following the entry of the order awarding compensation for A.M.'s injuries, Petitioner sought a final award of attorneys' fees and costs as well as reimbursement for certain costs incurred directly by her. *See generally* Fee Decision, 2017 WL 7053992.[2] The special master awarded attorneys' fees and costs and a reimbursement of petitioners' costs, including the amounts petitioner expended establishing guardianship over A.M. and the amounts required to maintain the guardianship throughout A.M.'s lifetime. *See id.*, at *13. The government does not object to the award of attorneys' fees and costs or to the provision for the majority of petitioner's expenses, but, it asserts that "[t]he special master erred by concluding that the costs for indefinite maintenance of the state guardianship were incurred on a Vaccine Act petition" and seeks to have those amounts excised from the final fee award. Resp't's Mem. in Support of Mot. for Review ("Resp't's Mem.") at 1, ECF No. 190. Petitioner has responded to the government's motion for review, *see generally* Pet'r's Resp. to Resp't's Mot. for Review ("Pet'r's Resp."), ECF No. 193, and a hearing on this matter was held on March 6, 2018.

## BACKGROUND

Ms. McCulloch filed a petition for compensation on A.M.'s behalf on May 11, 2009. *See* Fee Decision, 2017 WL 7053992, at *1. In it, she alleged that A.M. received a vaccination for human papillomavirus on August 16, 2007, and suffered "a severe neurological injury," *id.*, consisting of "autoimmune limbic encephalitis, an intractable seizure disorder, and resultant cognitive impairment and behavioral and personality disturbance," Pet'r's Resp. at 1.

After hearing expert and medical testimony, on May 22, 2015, the special master held that petitioner was entitled to compensation. *See generally McCulloch v. Secretary of Health & Human Servs.,* No. 09-293V, 2015 WL 3640610 (Fed. Cl. Spec. Mstr. May 22, 2015) ("Entitlement Decision"). The special master thereafter made an interim award of costs and of fees for attorney's work performed during the entitlement phase and for work preparing the interim fee request. *See McCulloch v. Secretary of Health & Human Servs.,* No. 09-293V, 2015 WL 5634323, at *27 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *mot. for reconsideration den.,* 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). At that time, $239,510.12 was awarded to petitioner's counsel and $250.00 to petitioner herself. *Id*.

After the entry of the interim fee award, the parties conferred regarding a stipulation of the total amount of compensation for A.M.'s injuries, which resulted in a proffer submitted to the special master on November 28, 2016. *See* Fee Decision, 2017 WL 7053992, at *1. The special master approved the parties' proffer the same day, and judgment was entered on December 7,

---

[2]Attorneys may not charge any fee for services rendered in connection with a petition under the Vaccine Act. *See Sebelius v. Cloer*, 569 U.S. 369, 373 (2013) (citing 42 U.S.C. § 300aa-15(e)(3)). "Instead, the special master or court awards attorneys' fees and costs, and [such] award[s are] paid from the [F]ederal [V]accine [T]rust [F]und." *Raymo v. Secretary of Health & Human Servs.*, 129 Fed. Cl. 691, 701 (2016) (citing 42 U.S.C. § 300aa-15(e)(1), (f)(4), (i)(2); *see also Rehn v. Secretary of Health & Human Servs.*, 126 Fed. Cl. 86, 91 (2016)).

2016, awarding a lump sum payment for A.M.'s injuries and an annuity "to cover A.M.'s ongoing life care expenses." *Id*., at **1-2.

In petitioner's consequent fee application, she requested, in addition to funds to compensate her attorney for the further work performed on her case, "reimbursement for certain costs she has personally incurred," including the cost of establishing the guardianship over A.M. and the amounts she will be required to pay in the future to maintain the guardianship. Fee Decision, 2017 WL 7053992, *2. The special master noted that these costs were associated with the preparation of an annual guardianship plan, an annual accounting of A.M.'s estate, an audit fee, and an annual premium on a $200,000 bond, all of which were requirements imposed by the Florida state court in approving the guardianship. *See id.*, at **8-13. The legal guardianship was expressly contemplated by the terms of the proffer developed between petitioner and respondent, *see* Pet'r's Resp. at 3 ("The terms of the proffer explicitly require the establishment of guardianship and the maintenance of guardianship for the duration of A.M.'s life as a prerequisite to the payment of petitioner's compensation award."), and the continuing maintenance of the guardianship was a required condition for payments made under the terms of the proffer, *see* Fee Decision, 2017 WL 7053992, at * 2 ("The annuity will be paid directly to petitioner as guardian of the estate of A.M.[, and i]f petitioner is removed from that role, the annuity will instead be paid to another party or parties appointed as the guardian.") (internal quotations and citations omitted).

The amounts the special master awarded in compensation for A.M.'s injuries, providing for her life care expenses moving forward, the attorney fee award, and the reimbursement of guardianship costs already incurred are not challenged by the government. *See* Resp't's Mem. at 1-2. Rather, the government challenges only the award of the future amounts Ms. McCulloch will be required to pay to maintain the legal guardianship over her daughter. *See id.* ("The special master erred by concluding that the costs for indefinite maintenance of the state guardianship were incurred on a Vaccine Act petition. Specifically, the special master erred by concluding that the costs were incurred in a 'proceeding on [a Vaccine Act] petition' . . . [and] by concluding that the future costs for maintaining the guardianship were 'incurred.'").

Thus, not in dispute are the special master's award of $49,269.30 in attorneys' fees, $20,594.44 in attorneys' costs, and $4,495.00 in petitioner's costs for establishing the guardianship, *see* Resp't's Mem. at 3; Fee Decision, 2017 WL 7053992, at **4-5, 13. The government seeks review and reversal of the award of costs petitioner will incur in the course of maintaining the guardianship throughout A.M.'s life, which petitioner reported to total $63,841.32. *See* Resp't's Mem. at 3 (stating the amount in dispute); Pet'r's Resp. at 3 (stating same) (citing Pet'r's Appl. For Final Fees & Costs, ECF No. 177, at Tab C (June 2, 2017)); Fee Decision, 2017 WL 7053992, at **8-13 (discussing and approving—with minor reductions—an award of costs necessary to maintain the legal guardianship over A.M.'s lifetime).

**STANDARDS FOR DECISION**

The Vaccine Act contemplates the award to successful vaccine petitioners of compensation that includes "[a]ctual unreimbursable expenses incurred from the date of the judgment awarding such expenses *and reasonable projected unreimbursable expenses which . . . have been or will be incurred*," resulting from the injury and relating to certain categories of

3

medical treatment, rehabilitation, and care, as well as such expenses incurred before the date of judgment. *See* 42 U.S.C. §§ 300aa-15(a)(1)(A), (B) (emphasis added). Likewise, because attorneys are not permitted to charge vaccine petitioners fees in connection with work performed to litigate Vaccine Act petitions, the Act provides that "[i]n awarding compensation on a petition filed under [the Vaccine Act] the special master or court shall also award as part of such compensation an amount to cover . . . reasonable attorneys' fees[ ]and . . . *other costs*[ ]. . . *incurred* in any proceeding on such petition." 42 U.S.C. § 300aa-15(e)(1) (emphasis added).

When ruling on a motion for review, "the United States Court of Federal Claims shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter . . . . set aside any . . . conclusion of law of the special master found to be . . . not in accordance with law and issue its own . . . conclusions of law." 42 U.S.C. § 300aa-12(e)(2); *see also Althen v. Secretary of Health & Human Servs.*, 418 F.3d 1274, 1281 (Fed. Cir. 2005) ("So long as the record contained sufficient evidence upon which to base predicate findings of fact and the ultimate conclusion of [the issue on which the special master was overruled], the [Court of Federal Claims] was not required to remand.").

## ANALYSIS

Respecting the costs Ms. McCulloch will incur in the future to maintain the legal guardianship over A.M. throughout A.M.'s lifetime, respondent asserts that, by its terms, the Vaccine Act contemplates only the reimbursement of costs *incurred* at the time of compensation, and thus the special master's award of costs that Ms. McCulloch will incur, but has not yet incurred, is improper. *See* Resp't's Mem. at 3, 10-12. Further, respondent argues that the expenses contested here were not associated with a proceeding on a Vaccine Act petition, because that language contemplates only the proceedings before the Office of Special Masters, the Court of Federal Claims, the Federal Circuit, and the Supreme Court in litigating the Vaccine Act petition itself. *Id.* at 8-10. Under this reading, respondent asserts that costs associated with state court proceedings and with the legal formalities required of legal guardians by state law cannot fall within the class of costs incurred on a proceeding under the Vaccine Act, and thus these costs cannot be reimbursed under 42 U.S.C. § 300aa-15, as the special master found. *See* Resp't's Mem. at 3-4; Fee Decision, 2017 WL 7053992, at * 7. In doing so, respondent emphasizes and relies on the attorneys' fee compensation provisions of Paragraph 15(e)(1) of the Act. *See* Resp't's Mem. at 3-4. That Paragraph provides that "the court shall also award as part of such compensation an amount to cover – (A) reasonable attorneys' fees, and (B) other costs, incurred in any proceeding on such petition." 42 U.S.C. § 300aa-15(e)(1). Respondent contrasts the generally applicable provisions in Paragraph 15(a)(1) of the Act which bear on the compensation to be provided to a prevailing *petitioner*, rather than petitioner's attorney. *See* Resp't's Mem. at 3-4. The basic statutory provisions relating to compensation for petitioners are cast in broader terms than those relating to attorneys' fees:

(a) General rule

*Compensation awarded* under the Program *to a petitioner* under section 300aa-11 of this title for a vaccine-related injury or death associated with

4

> the administration of a vaccine after October 1, 1988, *shall include the following*:
>
> > (1)(A) *Actual unreimbursable expenses incurred* from the date of the judgment awarding such expenses *and reasonable projected unreimbursable expenses* which-
> >
> > > (i) *result from the vaccine-related injury* for which the petitioner seeks compensation,
> > > (ii) *have been or will be incurred* by or on behalf of the person who suffered such injury, *and*
> > > (iii)(I) *have been or will be for diagnosis and medical or other remedial care determined to be reasonably necessary*, or
> > > (II) *have been or will be for* rehabilitation, developmental evaluation, special education, vocational training and placement, *case management* services, counseling, emotional or behavioral therapy, residential and *custodial care and service expenses*, special equipment, related travel expenses, and facilities *determined to be reasonably necessary*.

42 U.S.C. § 300aa-15(a)(1) (emphasis added).

Petitioner counters that the obligation to pay guardianship expenses was in fact *incurred* upon the special master's approval of the compensation amounts contained in the proffer, because payment of those amounts was expressly conditioned upon the maintenance of a legal guardianship throughout A.M.'s lifetime. *See* Pet'r's Resp. at 15. Likewise, petitioner posits that, because the proceedings on the petition required the maintenance of a legal relationship that was defined and regulated by state law, Ms. McCulloch was properly entitled to a reimbursement of those costs necessary to maintain that relationship. *Id*. at 9-10.

Respondent is indeed correct that the Vaccine Act's terms specify that reimbursement of attorneys' fees and costs is proper only for those "incurred in any proceeding on [a Vaccine Act] petition." *See* 42 U.S.C. § 300aa-15(e)(1); Hr'g Tr. 10:13-17 (Mar. 6, 2018).[3] The state guardianship proceedings are not themselves proceedings upon a Vaccine Act petition. In so finding, the court concludes that the holdings in *Tadio v. Secretary of Health & Human Servs.*, 2015 WL 9464870 (Fed. Cl. Spec. Mstr. Nov. 25, 2015) and by the special master in this case that costs associated with maintaining a legal guardianship are properly compensable within the language of Paragraph 15(e)(1) are inapposite. Such a reading of the language of Subsection 15(e) respecting attorneys' fees would carry the Vaccine Act's text too far afield of its plain meaning.

Nevertheless, the court finds that respondent's ultimate conclusion—that the costs associated with maintaining the legal guardianship throughout A.M.'s lifetime are not

---

[3]Further references to the transcript of the hearing held on March 6, 2018 will omit the date.

5

compensable and should be excised from the special master's final fee award—is unavailing. While the court declines to affirm the special master's award of those fees under 42 U.S.C. § 300aa-15(e)(1), the court nevertheless finds that the costs for which petitioner seeks reimbursement are properly compensable under 42 U.S.C. § 300aa-15(a)(1)(A) as "reasonable projected unreimbursable expenses which . . . result from the vaccine-related injury for which the petitioner seeks compensation, . . . [that] will be incurred by or on behalf of the person who suffered such injury, and . . . will be for . . . case management services, . . . [and/or] residential and custodial care and service expenses." *See also* Final Fee Application, ECF No. 177, at Tabs A, B, & C (listing, respectively, petitioner's attorneys' fees, attorneys' costs, and petitioner's costs); Hr'g Tr. at 5:3 to 8:3, 23:15 to 24:1 (noting that the final Fee Application separately delineated the costs to maintain the legal guardianship under "petitioner's costs," but that the special master treated them as part of the attorneys' costs award).

       The Vaccine Act does not define the term "case management services," *see generally* 42 U.S.C. § 300aa-33. Black's Law Dictionary gives a definition of "case management" that includes "[t]he handling over time of any project, transaction, service, or response that seeks to achieve resolution of a problem, claim, request, proposal, or other complex activity, often involving several persons and multiple communications." *Case Management*, Black's Law Dictionary (10th ed. 2014). Likewise, the Vaccine Act does not provide a definition for "residential and custodial care and service expenses," but "custody" is defined as "[t]he care and control of a . . . person for . . . preservation," and "legal custody" as involving "[t]he authority to make significant decisions on a child's behalf, including decisions about . . . healthcare." *Custody, Legal Custody,* Black's Law Dictionary (10th ed. 2014); *see also Guardianship*, Black's Law Dictionary (10th ed. 2014); Fla. Stat. § 744.361 (2015) (outlining the duties of one acting as guardian of another). The court concludes that the cost of maintaining guardianship over A.M. fits comfortably within either of these provisions. To provide for A.M.'s health and well-being—that is, to manage the unique challenges present in her case now that she has reached the age of majority—legal authority is required. This will require "the handling over time" of her healthcare needs—a substantial project that "seeks to achieve resolution of a problem . . . or other complex activity"—which is likely to involve "several persons and multiple communications." Likewise, maintaining the legal guardianship can be framed as a set of service expenses associated with providing for Ms. McCulloch's continuing custody over A.M.

       Respondent's contention that the listing in Paragraph 15(a)(1) of the events and matters properly includible in an award of compensation to a successful petitioner is exhaustive does not compel a different outcome here. *See* Hr'g Tr. at 8:4-11. Respondent cites *Hulsey v. Secretary of Health & Human Servs.*, 19 Cl. Ct. 331, 334 (1990), for the proposition that "[Paragraph] 15(a)(1) has also been held to be an exhaustive list . . . . [T]he [s]pecial [m]aster there awarded compensation for fiduciary services and classified them as case management services[, a]nd the court . . . held . . . that those costs were not compensable under 15(a)(1) because 15(a)(1) is an exhaustive list." Hr'g Tr. at 8:4-11. This argument is unpersuasive primarily because respondent misstates the holding of *Hulsey* in an important way. The court in *Hulsey* commented that "the Vaccine Act constitutes a limited waiver of sovereign immunity, and . . . the Act itself enumerates the only types of services for which compensation may be granted." *Hulsey*, 19 Cl. Ct. at 334. In *Hulsey*, a special master had concluded that an award for fiduciary services was proper based on the term "case management services," an undefined term in the

6

Vaccine Act. On review, the respondent had cited to the court unspecified "federal agency regulations" in place at the time that supposedly provided a definition for that term. *Id.* In that regard, the reviewing court reversed, noting that "neither petitioners nor the [s]pecial [m]aster [had] provide[d] th[e] court with a suggested definition." *Id.*

The record in this case is very different, being quite well developed in pertinent respects. Thus, "[t]he facts that make . . . *Hulsey* different from this case are more substantial than labelling differences." *Schwenk v. Secretary of Health & Human Servs.*, 23 Cl. Ct. 287, 292 (1991) (distinguishing *Hulsey*). While it may be true that the enumeration contained in Paragraph 15(a)(1) is exhaustive, the court concludes that the costs imposed by state law on a person seeking to maintain the legal relationship explicitly required as a precondition for payment of compensation on A.M.'s successful Vaccine Act petition are within the scope of the enumerated types of compensation allowable to a petitioner, not her attorney, under Paragraph 15(a)(1) of the Vaccine Act. Those costs are not attorneys' fees or costs subject to Subsection 15(e), but rather petitioners' costs governed by Subsection 15(a).[4]

In fundamental terms, A.M.'s tragic injuries render a legal guardian necessary for her care and well-being. The formalization of petitioner's legal relationship to A.M. serves as much to protect A.M.'s interests from exploitation as to enable A.M. to receive the best care possible throughout her life. To that end, the State of Florida prescribes legal requirements to ensure that A.M.'s interests are adequately protected. As a check that A.M. is receiving appropriate medical and rehabilitative care, petitioner must file a guardianship plan on an annual basis. *See* Fee Decision, 2017 WL 7053992, at *9. Also on an annual basis, petitioner must submit an accounting of A.M.'s estate to protect A.M.'s assets from exploitation. *Id.*, at **9-10. Finally, petitioner must pay an annual premium on a $200,000 bond to provide surety for A.M.'s interests throughout the course of the legal guardianship. *Id.*, at **10-11. The costs challenged by respondent, therefore, fit conformably within the Vaccine Act's provision for costs "incurred by or on behalf of the person who suffered [a vaccine] injury." *See* 42 U.S.C. § 300aa-15(a)(1)(A)(ii); *cf. also id.* at § 300aa-15(d)(2) (requiring that all amounts awarded under Paragraph 15(a)(1) be limited to "compensation [for] . . . the *health*, education, or *welfare* of the person who suffered the vaccine-related injury) (emphasis added). On this basis, the special master's decision awarding reimbursement of the costs of maintaining the legal guardianship for A.M.'s lifetime is upheld. *See* 42 U.S.C. § 300aa-12(e)(2) (In ruling upon a motion for review, "the United States Court of Federal Claims shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter . . . . set aside any . . . conclusion of law of the special master found to be . . . not in accordance with law and issue its own . . . conclusions of law.").

The court has considered whether it is prudent to issue its own conclusions of law necessary to resolve this case rather than remanding for further proceedings. If factual issues were contested, the court ordinarily would remand, but, here, because the issue that respondent requests this court to decide is one of law and the factual record underpinning that issue of law is

---

[4]The circumstance that the future annual submissions might be made either by an attorney, an accountant, or a financial or health planner, or all of them, does not affect this analysis. The person who bears the expenses that will be reimbursed is the petitioner.

amply developed, "the court is well[-]situated to spare both parties further litigation by making its own finding." *Davis v Secretary of Health & Human Servs.*, 105 Fed. Cl. 627, 637 (2012). The facts in the record are not in dispute, and the legal disagreement between the parties is a narrow one, the parties having extensively briefed and documented the issue. *See* Fee Decision, 2017 WL 7053992, at **8-13.

## CONCLUSION

For the reasons stated, respondent's motion for review of the special master's Fee Decision is DENIED. The special master's Fee Decision is AFFIRMED, albeit on grounds other than those adopted by the special master. Petitioner shall receive the costs for maintaining legal guardianship over A.M. throughout her lifetime in the amounts found reasonable by the special master, including: (1) $150.00 per year for the preparation of an annual guardianship plan; (2) $450.00 per year for the preparation of an annual accounting of A.M.'s estate, (3) $250 per year for an audit fee charged by and payable to the Florida state court, and $860.00 per year for the annual bond premium on the $200,000.00 bond required by the Florida state court, calculated by the parties to total $63,841.32. At respondent's election, these funds may be paid either in a lump sum or in an annuity payable over the course of A.M.'s life. The clerk shall enter judgment accordingly.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge